T.C. Memo. 2018-189

UNITED STATES TAX COURT

RANDY RICHARDSON AND MELISSA RICHARDSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6866-16L.                    Filed November 13, 2018.

Randy Richardson and Melissa Richardson, pro sese.

<u>Bradley C. Plovan</u> and <u>Nancy M. Gilmore</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>: In this collection due process (CDP) case, petitioners

seek review pursuant to sections 6320(c)[1] and 6330(d) of the determination by the

---

[1]Unless otherwise noted, all statutory references are to the Internal Revenue
Code in effect at all relevant times, and Rule references are to the Tax Court Rules
of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[\*2]** Internal Revenue Service (IRS or respondent) to sustain the filing of two notices of Federal tax lien (NFTL). The IRS initiated the collection actions with respect to petitioners' Federal income tax liabilities for 2009 through 2012. Respondent has moved for partial summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection actions was proper as a matter of law.[2] We will grant the motion in part and deny it in part.

## Background

The following facts are based on the parties' pleadings and respondent's motion, including the attached declaration and exhibits. Petitioners had a mailing address in Maryland when they filed their petition, but they stated that their legal residence was in Delaware.

A. Assessments for 2009-2012

Petitioners did not file a timely Federal income tax return for 2009. On January 23, 2012, they filed a delinquent return reporting no tax due. The IRS issued them a timely notice of deficiency for 2009, but they did not petition this

---

[2]Petitioners also sought review with respect to their 2013 and 2014 tax years. But the IRS did not issue them a notice of determination for those years, and we granted respondent's motion to dismiss for lack of jurisdiction as to them. See secs. 6320(c), 6330(d)(1); Rule 330(b). Respondent's motion for partial summary judgment thus addresses all remaining claims in this case.

**[*3]** Court for review of that notice. On December 1, 2014, the IRS assessed the deficiency, an addition to tax under section 6651(f) (which appears as a "miscellaneous penalty" on petitioners' transcript of account), an accuracy-related penalty under section 6662(a), and applicable interest.

Petitioners did not file a timely Federal income tax return for 2010. On January 23, 2012, they filed a delinquent return reporting $43,738 of tax due. On May 7, 2012, the IRS assessed the self-reported tax, additions to tax under section 6651(a), and applicable interest. On June 17, 2013, and June 2, 2014, the IRS assessed two more additions to tax, the latter of which was accompanied by an assessment of interest. On July 7, 2014, the IRS determined that petitioners' failure to file a timely return for 2010 had been fraudulent. It accordingly assessed a supplemental addition to tax under section 6651(f) (which appears as a "miscellaneous penalty" on petitioners' transcript of account).

The IRS issued petitioners a timely notice of deficiency for 2010, but they did not petition this Court for review of that notice. On December 1, 2014, the IRS assessed the deficiency, an addition to tax under section 6651(f) (which appears as a "miscellaneous penalty" on petitioners' transcript of account), and an accuracy-related penalty under section 6662(a).

[*4]    Petitioners did not file a timely Federal income tax return for 2011.  On January 31, 2013, they filed a delinquent return reporting tax due of $39,615.  On September 30, 2013, the IRS assessed the self-reported tax, additions to tax under sections 6651(a) and 6654, and applicable interest.  On March 10, 2014, the IRS assessed more interest and an addition to tax under section 6651(a)(2).  On July 7, 2014, the IRS determined that petitioners' failure to file a timely return for 2011 had been fraudulent.  It accordingly abated the September 30, 2013, assessment of a section 6651(a)(1) addition to tax and assessed a section 6651(f) addition to tax (which appears as a "miscellaneous penalty" on petitioners' transcript of account), more interest, and an addition to tax under section 6651(a)(2).

The IRS issued petitioners a timely notice of deficiency for 2011, but they did not petition this Court for review of that notice.  On December 15, 2014, the IRS assessed the deficiency, an addition to tax under section 6651(f) (which appears as a "miscellaneous penalty" on petitioners' transcript of account), and an accuracy-related penalty under section 6662(a).

Petitioners did not file a timely Federal income tax return for 2012.  On February 24, 2014, they filed a delinquent return reporting $10,654 of tax due.  On March 24, 2014, the IRS assessed the self-reported tax, additions to tax under section 6651(a), and applicable interest.

[*5] By the end of 2014 the IRS had recorded the following assessments relating

to 2009, 2010, 2011, and 2012:

| Description | Tax year | Amount | Assessed |
|---|---|---|---|
| Sec. 6662(a) penalty | 2009 | $14,619 | 12/01/14 |
| Miscellaneous penalty | | 54,822 | 12/01/14 |
| Deficiency | | 73,096 | 12/01/14 |
| Interest | | 21,635 | 12/01/14 |
| Sec. 6651(a)(1) addition to tax | 2010 | 7,704 | 05/07/12 |
| Self-reported tax | | 43,738 | 05/07/12 |
| Interest | | 1,720 | 05/07/12 |
| Sec. 6651(a)(2) addition to tax | | 2,782 | 05/07/12 |
| Sec. 6651(a)(2) addition to tax | | 5,350 | 06/17/13 |
| Interest | | 3,679 | 06/02/14 |
| Sec. 6651(a)(2) addition to tax | | 2,568 | 06/02/14 |
| Miscellaneous penalty | | 32,099 | 07/07/14 |
| Sec. 6662(a) penalty | | 22,358 | 12/01/14 |
| Miscellaneous penalty | | 83,844 | 12/01/14 |
| Deficiency | | 111,358 | 12/01/14 |
| Sec. 6654 addition to tax | 2011 | 784 | 09/30/13 |
| Sec. 6651(a)(1) addition to tax | | Abated | 09/30/13 |
| Self-reported tax | | 39,615 | 09/30/13 |
| Interest | | 1,980 | 09/30/13 |
| Sec. 6651(a)(2) addition to tax | | 3,565 | 09/30/13 |
| Interest | | 707 | 03/10/14 |
| Sec. 6651(a)(2) addition to tax | | 1,387 | 03/10/14 |
| Miscellaneous penalty | | 29,711 | 07/07/14 |
| Interest | | 1,742 | 07/07/14 |
| Sec. 6651(a)(2) addition to tax | | 1,585 | 07/07/14 |
| Sec. 6662(a) penalty | | 4,922 | 12/15/14 |
| Miscellaneous penalty | | 18,458 | 12/15/14 |
| Deficiency | | 24,611 | 12/15/14 |
| Self-reported tax | 2012 | 10,654 | 03/24/14 |
| Sec. 6651(a)(1) addition to tax | | 2,397 | 03/24/14 |
| Sec. 6651(a)(2) addition to tax | | 639 | 03/24/14 |
| Interest | | 336 | 03/24/14 |

[*6] B.       Collection Due Process Proceedings

In an effort to collect these unpaid liabilities, the IRS in January 2015 filed two NFTLs and notified petitioners, who timely requested a CDP hearing.  Their case was assigned to a settlement officer (SO) from the IRS Appeals Office in Kansas City, Missouri.  On March 16, 2015, the SO sent petitioners a letter acknowledging their request for a CDP hearing and scheduling a telephone conference in April.  The SO informed petitioners that he could consider collection alternatives only if they completed specified IRS forms and supplied supporting financial information.

On March 24, 2015, petitioners filed a petition under chapter 7 of the Bankruptcy Code with the U.S. Bankruptcy Court for the District of Maryland.  During the April 2015 telephone conference they informed the SO of their pending bankruptcy petition.  The SO thereupon suspended petitioners' CDP hearing and transferred their case to an IRS insolvency specialist for monitoring.  On August 31, 2015, the bankruptcy court entered an order discharging petitioners from bankruptcy.

The SO held a second telephone conference with petitioners on December 16, 2015.  They contended that some of the liabilities in question had been discharged in bankruptcy and should be abated.  But they did not specify which

[*7] liabilities should be abated or explain why the bankruptcy discharge covered those liabilities. They acknowledged that they had not yet submitted an offer-in-compromise (OIC) or any financial information but stated their intention to do so.

The SO then reviewed the bankruptcy order and, in conjunction with the IRS Insolvency Unit in Baltimore, Maryland (Baltimore Insolvency Unit), determined that certain of petitioners' 2010 tax liabilities had been discharged in bankruptcy. The IRS abated the following assessments relating to 2010:

| Description | Amount | Assessed |
|---|---|---|
| Sec. 6651(a)(1) addition to tax | $7,704 | 05/07/12 |
| Sec. 6651(a)(2) addition to tax | 2,782 | 05/07/12 |
| Sec. 6651(a)(2) addition to tax | 5,350 | 06/17/13 |
| Sec. 6651(a)(2) addition to tax | 2,568 | 06/02/14 |
| Miscellaneous penalty | 32,099 | 07/07/14 |

The SO determined (and the Baltimore Insolvency Unit confirmed) that the assessments for 2009, 2011, and 2012 were ineligible for discharge and had not been discharged.

The SO waited 47 days after the telephone conference for petitioners to propose a collection alternative and to submit financial information. Having received no response, the SO closed their case and on February 16, 2016, issued a notice of determination sustaining the NFTL filings. Petitioners timely petitioned this Court

**[\*8]** and, on August 31, 2017, respondent moved for partial summary judgment.[3]

Although we directed petitioners to respond to that motion, they did not do so.

Discussion

A.     Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp., 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

---

[3]Respondent styled his motion as a motion for partial summary judgment because he had separately moved to dismiss the case with respect to petitioners' 2013 and 2014 tax liabilities. See supra note 2.

**[\*9]** Because petitioners did not respond to the motion for summary judgment, we could enter decision against them for that reason. See Rule 121(d). We will nevertheless consider the motion on its merits.

B.     Standard of Review

Where the validity of the taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where (as here) the underlying liability is not in dispute, we review the IRS' actions for abuse of discretion.[4] Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). An abuse of discretion includes an erroneous interpretation and application of bankruptcy law. See Swanson v. Commissioner, 121 T.C. 111, 119 (2003); see also Bussell v. Commissioner, 130 T.C. 222, 236 (2008) ("A taxpayer's assertion that his or her tax liabilities were discharged in bankruptcy amounts to a challenge to the appropriateness of the collection action[.]").

---

[4]Petitioners did not dispute their underlying liabilities at the CDP hearing and are thus precluded from challenging them here. See Thompson v. Commissioner, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

[*10] C.    Analysis

In ascertaining whether the SO abused his discretion, we review the record to determine whether he:  (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioners raised, and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioners] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).

Petitioners advanced three contentions in their petition.  First, they argued that they intended to submit an OIC and that the SO had closed their case prematurely.  Although petitioners may have intended to submit an OIC, they did not follow through on this intention.  An SO does not abuse his discretion in declining to consider collection alternatives when the taxpayer neglects to propose any.  Sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.  The SO afforded petitioners ample time to prepare and submit an OIC; after 47 days had elapsed with no communication from petitioners, he did not abuse his discretion in closing the case. See, e.g., McLaine v. Commissioner, 138 T.C. 228, 243 (2012); Copper v. Commissioner, T.C. Memo. 2017-231, at *8.

[*11] Second, petitioners contended that the tax liens should be avoided because the NFTLs were filed during the "preference period" preceding their bankruptcy. Certain transactions occurring in the 90-day period immediately before a bankruptcy filing may be avoided upon application of the trustee or debtor. See 11 U.S.C. secs. 522(h), 547(b) (2012). However, a Federal tax lien is not avoidable by a debtor as a preferential transfer where (as here) an NFTL was properly filed before commencement of the bankruptcy case. See 11 U.S.C. secs. 545(2) (cross-referencing sec. 6323), 547(c)(6) (2012); Spicer v. IRS (In re Motion Mktg. Sols., Inc.), 403 B.R. 403, 409 (Bankr. N.D. Tex. 2009) (holding that a Federal tax lien was avoidable as a preferential transfer under 11 U.S.C. sec. 547 only to the extent it was otherwise avoidable under 11 U.S.C. sec. 545(2)).

Finally, petitioners contended that some of the tax liabilities in question had been discharged in bankruptcy. A chapter 7 discharge relieves a debtor from all personal liabilities (incurred before the filing of the bankruptcy petition) except those listed in section 523 of the Bankruptcy Code. See 11 U.S.C. sec. 727(b) (2012); Bussell, 130 T.C. at 234. Section 523 excepts from discharge any tax: (i) for which the due date (including extensions) for the relevant tax return was within three years before the filing of the bankruptcy petition (three-year rule),

**[*12]** (ii) for which the relevant tax return was not timely filed and was filed within two years of the bankruptcy petition (two-year rule), (iii) that was assessed within 240 days of the bankruptcy petition (240-day rule), or (iv) for which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat the tax. See 11 U.S.C. sec. 523(a)(1) (2012) (cross-referencing 11 U.S.C. sec. 507(a)(8) (2012)). These exceptions are self-effecting; the IRS need not take any action to preserve a tax debt in bankruptcy. See Colvin v. Commissioner, T.C. Memo. 2010-235, 100 T.C.M. (CCH) 361, 363 (2010), aff'd, 460 F. App'x 349 (5th Cir. 2012) ("A nondischargeable tax debt is not affected by the failure to file a proof of claim."); Brints v. Commissioner, T.C. Memo. 1989-457, 57 T.C.M. (CCH) 1405, 1408 (1989).

In a CDP case such as this, we have jurisdiction to determine whether the tax liabilities that the IRS seeks to collect have been discharged in bankruptcy. See Bussell, 130 T.C. at 243 (upholding a collection action after determining that the underlying tax debt was excepted from discharge by 11 U.S.C. sec. 523); Washington v. Commissioner, 120 T.C. 114, 120-121 (2003); cf. Neilson v. Commissioner, 94 T.C. 1, 9 (1990) (ruling that we lack jurisdiction to make this determination in a deficiency case).

**[\*13]** Most of the liabilities listed on the NFTLs were excepted from discharge by the three-year rule, the 240-day rule, or both. All liabilities for 2011 and 2012 were excepted from discharge by the three-year rule because the extended due dates for those returns (October 15, 2012, and October 15, 2013) were within three years of March 24, 2015, the date on which petitioners filed for bankruptcy. See 11 U.S.C. secs. 507(a)(8)(A)(i) and 523(a)(1)(A) (2012).[5] All liabilities for 2009 and certain liabilities for 2010 were excepted from discharge by the 240-day rule because those liabilities were assessed on or after July 27, 2014 (240 days before the bankruptcy commenced).

The only liabilities potentially eligible for discharge were petitioners' 2010 liabilities that were assessed before July 27, 2014. The SO stated in the notice of determination: "Our records indicate that some of the assessments made by the Service in 2012 may be considered dischargeable." For petitioners' 2010 tax year, the assessments that the IRS made during 2012 were the $43,738 tax assessment (plus related assessments of interest and additions to tax) made on May 7, 2012. In his motion for summary judgment respondent represented that, in response to the SO's inquiries, the Baltimore Insolvency Unit had "confirmed that none of the

---

[5]Because petitioners filed their 2012 return late, their liabilities for that year are also excepted from discharge by the two-year rule. See 11 U.S.C. sec. 523(a)(1)(B)(ii) (2012).

**[*14]** assessments at issue were discharged by petitioners' bankruptcy except for the $43,738 assessment for the 2010 tax year (and related additions to tax) made on May 7, 2012." (The SO stated the same in his sworn declaration.) Respondent represented that "[t]he May 7, 2012, and July 7, 2014, assessments have been abated due to petitioners' later bankruptcy discharge."

On February 22, 2018, we directed respondent to supplement his motion for summary judgment to clarify the status of petitioners' 2010 tax liabilities. We noted that the Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for petitioners' 2010 tax year showed that the SO had abated only the late-filing and failure-to-pay additions to tax assessed on May 7, 2012. The underlying tax assessment of $43,738 and two related interest assessments of $1,720 and $3,679 (made on May 7, 2012, and June 2, 2014, respectively) did not appear to have been abated. We asked respondent to supplement his motion to address this point.

In his March 23, 2018, response to our order respondent acknowledged that the IRS had abated neither the $43,738 assessment made on May 7, 2012, nor the interest assessed on that sum. He stated that he "believed the assessments had been abated due to petitioners' * * * discharge under Chapter 7." Respondent

**[\*15]** requested additional time to work with the Baltimore Insolvency Unit to resolve this situation.

On July 23, 2018, respondent filed a status report stating that the $43,738 assessment made on May 7, 2012, together with all related additions to tax, had now been abated. An updated copy of the Form 4340 for petitioners' 2010 tax year confirmed that those abatements had been made. Respondent represented that petitioners' overall balance due for 2010 (net of abatements) was $222,454 as of July 16, 2018.

On August 6, 2018, we issued an order noting that, while the IRS had abated the $43,738 assessment made on May 7, 2012, together with all related additions to tax, the two related interest assessments of $1,720 and $3,679 did not appear to have been abated. We directed respondent to file another status report addressing that point.

In a status report filed October 10, 2018, respondent changed his position. He now contends that the $43,738 assessment made on May 7, 2012, which the IRS had previously abated, "was excepted from petitioners' bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(1)(C)." Respondent stated that the IRS was taking

**[\*16]** steps to reverse the abatement of that $43,738 assessment and of all related additions to tax.[6]

Because respondent's most recent position appears inconsistent (in whole or in part) with the determinations previously made by the SO and by the Baltimore Insolvency Unit, as well as with respondent's previous position in this Court, we conclude that further proceedings are required to resolve questions concerning the discharge and abatement of petitioners' 2010 tax liabilities. We will grant respondent's motion for partial summary judgment with respect to petitioners' 2009, 2011, and 2012 liabilities, and with respect to petitioners' 2010 liabilities that were assessed on or after July 27, 2014. We will deny respondent's motion with respect the 2010 liabilities assessed before July 27, 2014, as set forth below:

---

[6]Respondent also reiterated his position (with which we agree) that the December 1, 2014, assessment of tax for 2010 of $111,358, together with the related section 6662 penalty and addition to tax made the same day, were not discharged in bankruptcy.

[*17]

| Description | Amount | Assessed |
|---|---|---|
| Sec. 6651(a)(1) addition to tax | $7,704 | 05/07/12 |
| Self-reported tax | 43,738 | 05/07/12 |
| Interest | 1,720 | 05/07/12 |
| Sec. 6651(a)(2) addition to tax | 2,782 | 05/07/12 |
| Sec. 6651(a)(2) addition to tax | 5,350 | 06/17/13 |
| Interest | 3,967 | 06/02/14 |
| Sec. 6651(a)(2) addition to tax | 2,568 | 06/02/14 |
| Miscellaneous penalty | 32,099 | 07/07/14 |

To reflect the foregoing,

An order will be issued granting in part and denying in part respondent's motion for partial summary judgment.